1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

CASSANDRA BAILEY,

                       Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

No. 1:16-CV-3111-TOR

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

13

14

15

16

17

     BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 12; 13).  This matter was submitted for consideration without oral argument.  The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's motion.

18

**JURISDICTION**

19

     The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

20

//

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  *Id.* § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  *Id.* § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  *Id.* § 416.920(a)(4)(ii).  If the claimant suffers from "any

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. *Id.* § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. *Id.* § 416.920(a)(4)(iii). If the impairment is as severe as or more severe than one of the enumerated impairments the Commissioner must find the claimant disabled and award benefits. *Id.* § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, *id.* § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). *Id.* § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3

disabled.  *Id.* § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. *Id.* § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  *Id.* § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The burden of proof is on claimant at steps one through four above.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ADMINISTRATIVE PROCEEDINGS

On December 17, 2012, Cassandra Bailey filed an application for Supplemental Security Income (SSI), alleging disability beginning on December 1, 2011.  Tr. 19.  Her application was denied initially and upon reconsideration.  Tr.

1    19.  She thereafter filed a written request for hearing.  Tr. 19.  A hearing was held

2    before Administrative Law Judge (ALJ) on November 18, 2014.  Tr. 19.

3        On November 25, 2014 the ALJ rendered a decision denying Plaintiff's

4    claim.  Tr. 31.  At step one, the ALJ found that Plaintiff had not engaged in

5    substantial gainful activity since December 17, 2012, the application date.  Tr. 21.

6    At step two, the ALJ found that Plaintiff had the following severe impairments:

7    lumbar degenerative disc disease, obesity, depressive disorder, anxiety disorder,

8    and seizure disorder.  Tr. 21.

9        At step three, the ALJ found that Plaintiff does not have an impairment or

10    combination of impairments that meets or medically equals a listed impairment.

11    Tr. 22.  The ALJ concluded that Plaintiff had the RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) with some
> exceptions.  The claimant can engage in unskilled, repetitive, routine work
> in which she has no contact with the public and occasional contact with
> supervisors and coworkers.  She will be off task at work 10% of the time but
> still meet minimum production requirements of the job.  The claimant will
> be absent from work one time per month.  The claimant cannot work at any
> height or in close proximity to hazardous conditions, and cannot drive
> vehicles.

17    Tr. 25.

18        At step four, the ALJ found Plaintiff is not capable of performing past

19    relevant work.  Tr. 29.  The ALJ proceeded to step five and found that, considering

20    Plaintiff's age, education, work experience, and RFC, there are jobs in significant

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5

numbers in the national economy that Plaintiff could perform.  Tr. 30.  On that

basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social

Security Act.  Tr. 31.

Ms. Bailey thereafter filed a request for review with the Appeals Council,

which was denied.  Tr. 1-7.  The ALJ's decision became the final decision of the

Commissioner.  *See* 20 C.F.R. §§ 404.981, 422.201.

### STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is

limited:  the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means relevant evidence that "a

reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159

(quotation and citation omitted).  This requires "more than a mere scintilla[,] but

less than a preponderance."  *Id.* (quotation and citation omitted).  In determining

whether this standard has been satisfied, a reviewing court must consider the entire

record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  If the evidence in the record "is

susceptible to more than one rational interpretation, [the court] must uphold the

ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which the ALJ did not rely.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income under Title XVI of the Social Security Act. Plaintiff raises the following five issues for this Court's review:

(1) Whether the ALJ erred by disregarding Ms. Bailey's Borderline Personality Disorder diagnosis and by failing to find that this disorder is a severe medically determinable impairment.

(2) Whether the ALJ erred by failing to consider whether Ms. Bailey's seizure disorder meets Listing 11.02.

(3) Whether the ALJ failed to properly consider the medical opinion evidence, erroneously rejecting the treating and examining medical opinions of record.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

(4) Whether the ALJ discredited Ms. Bailey's symptom testimony without providing specific, clear, and convincing reasons for so doing.

(5) Whether the ALJ erred by finding that, based upon his RFC assessment, Ms. Bailey can perform substantial gainful activity.

ECF No. 12 at 2.  The Court evaluates each issue in turn.

## DISCUSSION

### A.  Borderline Personality Disorder Diagnosis

Plaintiff argues that the ALJ erred by failing to consider Dr. Burdge's opinion that Plaintiff had borderline personality disorder, and that this resulted in error.  ECF No. 12 at 7-9.  Plaintiff is correct in that Dr. Burdge's diagnosis is entitled to deference and must be fully considered.  ECF No. 15 at 4 (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)); and 20 C.F.R. § 416.927(c)).  However, as Plaintiff rightly notes, the ALJ did not discuss the diagnosis for borderline personality disorder.  Tr. 19-31.

The second step of the process requires the ALJ to determine whether an individual has one or more severe medically determinable impairments.  20 C.F.R. § 416.920(4)(ii).  A medically determinable impairment is one diagnosed by an "acceptable medical source," which includes licensed or certified psychologists. 20 C.F.R. § 416.913; Social Security Ruling (SSR) 06-03p.  An impairment is

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

"severe" unless it has "no more than a minimal effect" on the individual's ability to perform basic work activities.  SSR 85-28; *see also Yuckert v. Bowen*, 841 F.2d 303 (9th Cir. 1988).  These impairments then form the basis for the remaining analysis.

The ALJ erred at step two because the ALJ did not consider the diagnosis for borderline personality disorder, which is "severe" according to Dr. Burdge's opinion.  6F at 3.  Defendant argues this was harmless because "the ALJ resolved that step in Bailey's favor."   ECF No. 13 at 18.  While it is true the ALJ continued past step two, this misses the point, as the error at step two skewed the remaining decision.   Dr. Burdge's opinion described Ms. Bailey's personality disorder as "severe," resulting in "intense and unstable interpersonal relationships and impulsive and damaging behavior."  6F at 3.  As Plaintiff correctly observes:

> [T]he ALJ discredited Ms. Bailey's symptom testimony based upon her difficulty with interpersonal relationships, which the ALJ dismissed as her 'chaotic life,' despite that Dr. Burdge's opinion which makes clear that Ms. Bailey's interpersonal difficulties are specifically caused by her borderline personality disorder . . .  Because the ALJ failed to even mention Dr. Burdge's diagnosis of borderline personality disorder, [the ALJ] provided no reasoning for disregarding this diagnosis and, as a result, erroneously concluding that Ms. Bailey's 'chaotic life'—not an impairment—precludes her from working.

ECF No. 15 at 2.

Notably, the ALJ specifically opined that "[w]ithout this situational instability the claimant more likely than not could be employed in a full time

capacity." ECF No. 7-2 at 28. Consequently, the ALJ erred by assessing this "situational instability" separate and apart from any mention of the claimant's diagnosis of borderline personality disorder, which at the very least must be discussed when determining whether this "situational instability" is a result of an impairment or life choices. As this failure is not harmless, a remand is necessary.

**B. Listing 11.02**

In determining whether a claimant is disabled, the ALJ must consider whether the claimant's impairments meet or equal a listing. 20 C.F.R. § 416.920(a)(4)(ii). If a claimant shows that her impairments meet or equal a listing, the claimant will be found presumptively disabled. *Id.* §§ 416.920(d), 404.1526. A claimant's impairments meet or equal a listing when they are medically equal to those impairments in the listing. *Id.* § 404.1526. The Commissioner finds medical equivalence by comparing evidence and symptoms of the alleged impairment with the medical criteria of the listed impairment. *Id.* The claimant must have medical evidence to show that the impairment meets or equals a listing. *Id.*

Plaintiff cites Listing 11.02,[1] Epilepsy, which is met when the individual has

---

[1]    At the Administrative hearing Plaintiff's counsel argued that the claimant met Listing 11.03. Tr. 75-76. However, Listing 11.03 is "Reserved", which indicates counsel intended to argue for Listing 11.02. *See*

"generalized tonic-clonic seizures, occurring at least once a month for at least three consecutive months," or "dyscognitive seizures, occurring at least once a week for at least 3 consecutive months."[2]  ECF No. 12 at 9-10 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).  The individual's seizures must occur at the indicated frequency "despite adherence to prescribed treatment," unless the individual has "good reason" for not adhering to treatment.  20 C.F.R. Part 404, Subpart P, Appendix 1, 11.00C, 11.00H4.

_____

*https://www.ssa.gov/disability/professionals/bluebook/11.00-Neurological-Adult.htm*

[2]  *Tonic-Clonic Seizures*—also known as "grand mal" seizures—cause loss of consciousness, stiffening of the muscles, and jerking movements, typically lasting 1 to 3 minutes, but can take much longer for a person to recover. http://www.epilepsy.com /learn/types-seizures/tonic-clonic-seizures.  A dyscognitive seizure (formerly complex partial seizure) generally lasts one to two minutes, they may have an aura (or warning), include automatisms (such as lip smacking, picking at clothes, fumbling), an unawareness of surroundings, or cause wandering.  http://www.epilepsy.com/learn/types-seizures/complex-partial-seizures

1    Plaintiff explains that Ms. Bailey was not taking seizure medication due to

2    significant side effects and her need to care for her daughter, ECF No. 12 at 5

3    (citing Tr. 51-52), and that, even when taking medication, her dyscognitive

4    seizures continued to occur multiple times per day, ECF No. 12 at 5 (citing Tr. 60,

5    65).

6    The claimant testified that she had a grand mal seizure on November 16,

7    2014 (two days before the hearing) that took a "few hours" to recover, where she

8    "fell and [] was shaking and [] came to with [her] dad [standing] over [her]."[3]  Tr.

9    51.  The claimant testified that medication helped with the grand mal seizures, but

10   that she had stopped taking her seizure medication in May 2014, approximately six

11   months before the hearing, Tr. 51, because of side effects (including headaches,

12   

13   [3]    A *Grand Mal Seizures* have two stages: first there is "[l]oss of consciousness

14   . . . and the muscles suddenly contract and cause the person to fall down.  This

15   phase tends to last about 10 to 20 seconds[;]" second, "[t]he muscles go into

16   rhythmic contractions, alternately flexing and relaxing.  Convulsions usually last

17   for less than two minutes."  http://www.mayoclinic.org/diseases-conditions/grand-

18   mal-seizure/basics/symptoms/con-20021356.  In contrast, *Petit Mal Seizures*—also

19   known as *absence seizures*—"cause[] a short period of 'blanking out' or staring

20   into space."  http://www.epilepsy.com/learn/types-seizures/absence-seizures

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12

mood swings, and exhaustion) that hindered her ability to take care of her six month old daughter, Tr. 52. The claimant testified that even with medication she had absence seizures, and that since her daughter was born she has had absence seizures "at least three to four times a day." Tr. 54. The Claimant testified that the longest she had gone without a seizure was two to three months when she took medication, but clarified that she still had the *absence seizures* during those stents. Tr. 60, 65.

As the above testimony seems to at least suggest Listing 11.02 is applicable, the ALJ must specifically consider this listing on remand.

### C.  Review of Treating Physicians

Plaintiff argues that "the ALJ rejected the medical opinions of the only treating and examining medical sources of record, including the treating opinion of Dr. Crank and the examining opinion of Dr. Burdge, both of whom found that Ms. Bailey has significant work-related limitations that preclude her from engaging in competitive employment." ECF No. 12 at 11 (citing Tr. 28-29; 408-13, 717-26).

### 1.  Standard for review of treating and examining medical opinions

A treating physician's opinions are generally entitled to substantial weight in social security proceedings. *Bray*, 554 F.3d at 1228 (citation omitted); *Orn*, 495 F.3d at 631 ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians.") (citing 20 C.F.R. § 404.1527)).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13

"[I]f a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight.'" *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)) (brackets omitted).  If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

However, the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation, internal brackets, and citation omitted).  Moreover, "[i]f there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).  Despite this, "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Orn*, 495 F.3d at 631).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence

1    in the record, the Administration considers specified factors in determining the

2    weight it will be given as set out in 20 C.F.R. § 404.1527(c)(2)-(6).  *Orn*, 495 F.3d

3    at 631.  "These factors include the 'length of the treatment relationship and the

4    frequency of examination' by the treating physicians, the 'nature and extent of the

5    treatment relationship' between the patient and the treating physician, the

6    'supportability' of the physician's opinion with medical evidence and the

7    consistency of the physician's opinion with the record as a whole."  Ghanim, 763

8    F.3d at 1161.

9         Additional factors relevant to evaluating any medical opinion, not limited to
          the opinion of the treating physician, include the amount of relevant
10        evidence that supports the opinion and the quality of the explanation
          provided; the consistency of the medical opinion with the record as a whole;
11        the specialty of the physician providing the opinion; and "[o]ther factors"
          such as the degree of understanding a physician has of the Administration's
12        "disability programs and their evidentiary requirements" and the degree of
          his or her familiarity with other information in the case record.

13

14    *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(3)-(6)).

15         An ALJ may only reject a treating physician's contradicted opinions by

16    "providing specific and legitimate reasons that are supported by *substantial*

17    *evidence*."  *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830–31

18    (9th Cir. 1995)) (emphasis own).  "This is so because, even when contradicted, a

19    treating or examining physician's opinion is still owed deference and will often be

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15

1   'entitled to the greatest weight . . . even if it does not meet the test for controlling

2   weight.'" *Garrison*, 759 F.3d at 1012 (citing *Orn,* 495 F.3d at 633).

3       The phrase "supported by substantial evidences" means "such relevant

4   evidence as a reasonable mind might accept as adequate to support a conclusion."

5   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison*

6   *Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "An ALJ can satisfy the 'substantial

7   evidence' requirement by 'setting out a detailed and thorough summary of the facts

8   and conflicting clinical evidence, stating his interpretation thereof, and making

9   findings.'" *Garrison,* 759 F.3d at 1012) (quoting *Reddick v. Chater*, 157 F.3d 715,

10  725 (9th Cir. 1998)).

11      **2.  Dr. Burdge**

12      Aaron Burdge, Ph.D., is an examining physician of Ms. Bailey.  Dr. Burdge

13  opined that Ms. Bailey suffered from Depression and Anxiety, and specifically

14  diagnosed Ms. Bailey with Major Depressive Disorder, Panic Disorder without

15  Agoraphobia, and Borderline Personality Disorder, Severe.  6F at 3.  He opined

16  that Ms. Bailey's psychological symptoms "significant[ly]" limit her ability to

17  perform numerous work-related activities, including performing activities within a

18  schedule, maintaining regular attendance, and being punctual within customary

19  tolerances; performing routine tasks without special supervision; and maintaining

20  appropriate behavior in a work setting.  6F at 3-4.  He also opined that her

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 16

symptoms "very significant[ly]" limit her ability to "complete a normal work day and work week without interruptions from psychologically based symptoms."  6F at 3-4.

The ALJ purported to accord "some weight" to Dr. Burdge's examining opinion.  Tr. 28-29.  First, the ALJ accorded "little weight", Tr. 28, to Dr. Burdge's conclusion that Ms. Bailey has a "marked" (i.e. very significant) limitation in the ability to complete a normal workday and workweek.  The ALJ reasoned that, in reaching this conclusion, Dr. Burdge relied upon Ms. Bailey's subjective statements, and that this finding is inconsistent with the medical record.  Tr. 28-29.

Notably, as discussed more below, the purportedly inconsistent medical records referred to are limited to records where the claimant visited the hospital for non-mental medical issues, and these records merely conclude that the claimant was oriented to time, place and date, was displaying normal affect, or displayed no "unusual" anxiety or depression.  *See* ECF No. 12 at 13-14.  The cursory comments made in these records where the claimant was not seeking medical help should not be accorded more weight than an opinion from a psychologist whom the claimant specifically sought for a psychological examination.  *Orn*, 495 F.3d at 631 (specialty of physician providing the opinion is a factor to consider).  In no way do these cursory notes provide a "clear and convincing" reason to discount Dr. Burdge's opinion.  *Bayliss*, 427 F.3d at 1216 (citation omitted).

Moreover, the ALJ accorded Dr. Burdge's opinion less weight because Dr. Burdge purportedly did not explain the basis for the limitation, and appeared to have relied on claimant's subjective statements.  Tr. 28-29.  Importantly, Dr. Burdge's opinion recognized there were some indications of lack of forthrightness and took this into account in assessing the Personality Assessment Inventory (PAI) mental health assessment.  *See* 6F at 2-3.  Further, Dr. Burdge did provide some explanation for his opinion, stating the claimant evidenced "severe anxiety, significant depression, suspiciousness, impulsivity, anger, [and] resentment."  6F at 3.  He explained that Ms. Bailey's Borderline Personality Disorder, which he described as "severe," is characterized by "intense and unstable interpersonal relationships and impulsive and damaging behavior."  6F at 3.  This is surely more than "no explanation", and the nature of mental illnesses generally requires at least some reliance on subjective statements.  Notably, Dr. Dana Harmon, PhD, a reviewing psychologist relied on the evaluation of Dr. Burdge, which suggests the opinion should be accorded more weight than given.

The ALJ erred in discounting Dr. Burdge's opinion in such a cursory way, and this error was not harmless.

### 3.  Dr. Crank

Jeremiah Crank, MD, is a treating physician of the claimant.  Tr. 28.  The ALJ accorded Dr. Crank's opinion "very little weight[.]"  Tr. 28.  The ALJ

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

reasoned that Dr. Crank's opinion that the claimant cannot even perform sedentary

work "due to unpredictable seizures" is inconsistent with medical records and that

Dr. Crank relied on the claimant's subjective statements, which the ALJ considered

were not entirely credible.  Tr. 28.

With respect to the purportedly inconsistent medical record, as Plaintiff

observes:

> The ALJ found that Dr. Crank's opinion regarding Ms. Bailey's seizure
> disorder is inconsistent with Ms. Bailey's purported statements to other
> treating providers "regarding the absence of seizures."  Tr. 28; *see* Tr. 27.
> However, in making this finding, the ALJ relied solely upon one emergency
> room treatment record from November 2014—a record that is, in fact, fully
> consistent with Dr. Crank's opinion.  According to that record, Ms. Bailey
> stated that, prior to her surgery, she had not had "generalized," or grand mal,
> seizures for years.  Tr. 742-43.  However, she did not, as the ALJ implied,
> indicate that she has had no seizures from frequent and persistent petit mal
> seizures; and it is these seizures upon which Dr. Crank's opinion is based.
> *See* Tr. 723.

ECF No. 12 at 14-15.  Plaintiff is correct in that the record is not necessarily

inconsistent for the given reason, and the ALJ must spell out the contradiction in

medical terms, fully considering the distinctions between varying types of seizures.

Moreover, as discussed further below, the ALJ erroneously discredited Ms.

Bailey's symptom testimony, so the ALJ's decision cannot rest on this ground

alone.  The ALJ erred in discounting the opinion.

//

//

**D.  Claimant's testimony**

"An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn*, 495 F.3d at 635 (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  However, where a medial impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  *Id.* (citing *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999) (quoting *Lester,* 81 F.3d at 834)).  Without "affirmative evidence" the claimant was a malingerer, the ALJ must give "clear and convincing" reasons for rejecting the claimant's testimony.  *Id.* (citation omitted).

The ALJ found that Ms. Bailey's testimony regarding the intensity, persistence, and limiting effects of her symptoms is not entirely credible.  Tr. 25. First, the ALJ reasoned that Ms. Bailey's daily activities—specifically, caring for her infant daughter and sharing household chores with her step-father—indicate that she is not as limited as alleged.  Tr. 25-26.

The claimant testified that she lives with her mother's ex-husband, Tr. 43, who collects social security due to a disability of depression and back and hip problems.  Claimant testified that "[h]e can do about anything anybody else can do but he fights through his pain so he works on a regular basis in our home . . . He helps me care for my daughter, he helps clean our apartment.  We have a chore list, he does the dishes, I clean and vacuum, and he does the laundry with me.  So we

1    split everything up." Tr. 44.  The claimant further testified that she can feel her

2    seizures coming on, so she is able to put her daughter in a safe place or give her to

3    her step-father.  Tr. 52.

4        This is entirely consistent with a work-place limitation stemming from

5    psychological problems and brief absence seizures.  The ability to jointly care for a

6    child with another disabled person does not preclude a finding that the claimant is

7    not disabled with respect to the ability to hold a job.  As the claimant explained,

8    she can feel the seizure coming on, so she is able to avoid the negative impact at

9    home.  But at work there is often no ability to hand off the work to another, and

10   employers likely would find this an inconvenience, at least.

11       The ALJ also concluded that "normal psychiatric observations seriously

12   undermine the claimant's allegations of severely limiting mental health symptoms.

13   Tr. 2.  The ALJ opined that "regular notations in the claimant's treatment notes of

14   normal psychiatric observations are inconsistent with allegations of severely liming

15   mental health systems[,]" reasoning that "[t]reating providers indicate the claimant

16   routinely presented with no abnormal psychiatric symptoms."   ECF No. 7-2 at 27

17   (citing 2F at 3, 8, 19, 23, 27, 35; 5F at 8; 7F at 5; 8F at 3; 9; 12F at 8; 17F at 14).

18   Notably, with respect to the records cited, the claimant was seeking medical help

19   for something other than her mental impairment, such as vomiting / diarrhea, 2F at

20   2, Neck and Back Injury, 2F at 6, 26, vaginal bleeding, 2F at 17, 34 and 8F at 3, 9,

a burn, 2F at 22, dental pain, 2F at 30,  a physical/pap, 5F at 5 and 7F at 2,

Dyspnea (difficult or labored breathing), 12F at 1, and complaints of seizures, 17F

at 13.  Moreover, the notes only stated that the "Psychiatric exam included findings

of patient oriented to a person place and time, Normal affect[,]"  2F at 3, 8, 19, 23,

27, 35; 8F at 3; 9; 12F at 8; 17F at 14, and that "The patient is oriented to time,

place, person, and situation.  The patient demonstrates the appropriate  mood

and affect."  5F at 8; 7F at 5.  These cursory records should not take the place of

the detailed diagnosis provided by Dr. Burdge.  *Orn*, 495 F.3d at 631 (specialty of

examining opinion a factor to consider).

The ALJ further stated that "[s]ome providers specifically indicated that the

claimant demonstrated no unusual anxiety or evidence of depression during

appointments." Tr. 26 (citing 3F at 11, 20, 31, 39; 13F at 6, 9, 18).  The ALJ

specifically referenced Dr. Burdge's opinion that indicated the claimant was

cooperative and friendly, made frequent eye contact, and demonstrated normal

speech.  Tr. 26 (citing 6F at 5).  The ALJ further reasoned that the claimant's

performance on psychological testing is inconsistent with allegations of severely

limiting mental health symptoms, pointing to Dr. Burdge's opinion (6F at 5-6) that

the claimant demonstrated normal thought process and content, perception,

memory, fund of knowledge, concentration, abstract thinking and judgment.  Tr. at

26.

These "normal" findings are not the complete story, however, as the same medical record also indicates the claimant's psychological based symptoms would have a "Marked" effect on the claimant's ability to complete a normal work day and work week without interruptions. ECF No. 7-7 at 148. This record further indicates the claimant has "Borderline Personality Disorder, Severe", among other things. 6F at 3. As this demonstrates, the alleged "normal" psychiatric observations are not necessarily inconsistent with allegations of severely limiting mental health symptoms. This conclusion is bolstered by the form of the record, which provides a separate analysis for each basic work activity—suggesting one work activity can be limited while another is not. *See* 6F at 3-4.

The ALJ erred in discounting the claimant's opinion for these reasons. Moreover, on remand, the ALJ should be careful not to give too much weight to its rationale that a lack of employment history suggest the Claimant simply does not want to work, as opposed to not being able to work. Tr. 27. Notably, the claimant testified that she withheld telling Walmart, her past employer, of her petit mal seizures because she "needed the job" and thought they would not let her work, calling the condition a potential "hazard" for them. Tr. 65-66. This suggests the claimant had a desire to work and shows she actually did work for some time, although brief (two months). Tr. 56.

//

## CONCLUSION

On remand, the ALJ should fully consider Dr. Burdge's diagnosis.  The ALJ should analyze in detail whether Ms. Bailey's seizure disorder meets Listing 11.02.  The ALJ should also provide an in-depth and specific explanation as to why the ALJ is discounting the opinions presented, as opposed to broad statements of contradictions; and the ALJ should take special care to distinguish contradictory statements from a mere absence of a specific complaint.  Finally, the ALJ should reassess claimant's credibility and claimant's RFC in light of the above to determine whether the claimant can perform substantial gainful activity.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 12) is **GRANTED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

3.  Pursuant to sentence four of 42 U.S.C. § 405(g), this action is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order.

The District Court Executive is directed to enter this Order and judgment accordingly, furnish copies to counsel, and close the file.

**DATED** March 13, 2017.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 24